UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

STEVEN M. COFFMAN,

      Plaintiff,

v.                                    Civil Action No. 2:09-00587

BANK OF AMERICA, NA, successor to
COUNTRYWIDE FEDERAL SAVINGS BANK,

      Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

      Pending is the motion for summary judgment by defendant Bank of America, NA ("BofA"), as successor to Countrywide Federal Savings Bank ("Countrywide"), filed June 15, 2010.


I.


      Plaintiff is employed by a commercial bakery and has been for eight years.  (Third Am. Compl. ¶ 4; Resp. 3).  He has a high school education and is unsophisticated in financial matters.  (<u>Id.</u>).  Plaintiff purchased his home in Wheeling, West Virginia, for approximately $46,000 in 1988.  (Compl. ¶ 5).

      In 2004, plaintiff went through personal bankruptcy. (Def.'s Mot., Ex. A at 15).  Plaintiff and his wife refinanced the home in 2007.  (Def.'s Mot., Ex. B).  They borrowed $64,500

at 7.25% annual interest. (Def.'s Mot., Ex. C). The note was payable over 15 years with a monthly principal and interest payment of $588.80. (Id.). With escrowed taxes and insurance, the total monthly payment was $667.50. (Def.'s Mot., Ex. D).

Plaintiff and his wife divorced in 2008. (Pl.'s Resp. 3). Plaintiff contacted Countrywide, the servicer of his existing home loan, to discuss the possibility of refinancing the home in his name. (Id.). Countrywide offered to lower his payments, and plaintiff agreed to refinance his home through Countrywide. (Id.).

Countrywide obtained an appraisal from appraiser Edward DiPino, who on July 27, 2008, valued the home at $84,000. (Def.'s Mot., Ex. M at 2). Plaintiff contends that Mr. DiPino reached an inflated value for the home as evidenced by a retrospective appraisal performed by Ron Wickham. (Pl.'s Resp. 3). Mr. Wickham determined that the home had a value of $64,000 as of July 2008. (Pl.'s Resp., Ex. B). Plaintiff contends that Mr. DiPino supplies Countrywide with inflated appraisals to enable illegal loan origination and that Countrywide has a history of obtaining inflated appraisals to originate loans. (Pl.'s Resp. 3).

Plaintiff claims that he was initially surprised by Mr. DiPino's appraised value, but relied on Countrywide's valuation. (Pl.'s Resp. 4; Def.'s Mot., Ex. A at 26-27). Plaintiff also states that he understood that he was required to transfer his auto loan balance of $6,990.00 into the mortgage loan as a condition of obtaining the mortgage loan from Countrywide. (Third Am. Compl. ¶ 8; Def.'s Mot., Ex. A., Coffman Dep. 38:19, Feb. 19, 2010). Based on the appraisal value of the home and with the added balance of his auto loan, plaintiff was approved for a mortgage of $76,734.00. (Id.). Plaintiff attended the closing on July 16, 2008. (Third Am. Compl. ¶ 10; Pl.'s Resp. 4). Plaintiff attended a second closing two days later on July 18, 2008, because Countrywide's agent at the first closing failed to obtain signatures on all of the required documents. (Id.). Plaintiff contends that the "closings occurred without any meaningful explanation or understanding of the transaction." (Third Am. Compl. ¶ 11).

Plaintiff's mortgage loan was for a term of 30 years. (Pl.'s Resp. 4). The fixed interest rate on the loan was 6.750%, and the monthly combined principal and interest payment was $497.70. (Def.'s Mot., Ex. F). Plaintiff claims that he understood his monthly payments would be $479.00, including taxes

3

and insurance, which he could afford.  (Pl.'s Resp. 4).  However, with escrow payments included, the total monthly payment was $609.18, which, it may be noted, was $58.32 less than his previous mortgage payment and eliminated his $317.00 per month auto loan payment.  (Def.'s Mot., Ex. D).  The Countrywide mortgage loan paid off the remaining $62,531.00 owed on his previous mortgage.  (Def.'s Mot., Ex. A, Coffman Dep. 25:13-17, 38:10-12).  Plaintiff also received $1,857.00 in cash out of the mortgage loan with which to pay various debts owed by him. (Def.'s Mot., Ex. A, Coffman Dep. 25:13-17, 37:19-38-02). Plaintiff claims that he was "blown away" when he discovered that his payments were over $600.00 per month, which he knew that he could not afford.  (Id. at 29:24-30:05).  Nevertheless, he agreed to the terms and closed the loan.

## II.  Procedural History

Some eight months after the loan closings, plaintiff filed this action on April 29, 2009, in the Circuit Court of Kanawha County against defendants BofA and Countrywide Home Loans, Inc.  On May 28, 2009, the defendants removed the action on the basis of diversity jurisdiction.  Plaintiff has amended his complaint on three occasions, such that BofA, successor to

4

Countrywide Federal Savings Bank, is the sole remaining defendant.  Plaintiff's third amended complaint only contains two counts: Count I - Unconscionable Inducement, and Count II - Fraud and Conspiracy.

BofA filed this motion for summary judgment on June 15, 2010.  As to both Counts I and II, BofA asserts that inasmuch as Countrywide is a federal savings bank, the Home Owners' Loan Act of 1933, 12 U.S.C.A. §§ 1461 et seq. ("HOLA"), and its accompanying regulation, 12 C.F.R. § 560.2, preempt plaintiff's claims regarding the origination of her mortgage loan by Countrywide.  Alternatively, BofA seeks summary judgment as to Counts I and II on the merits of plaintiff's claims.

### III.  Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

5

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Id.  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); id. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v.

6

<u>Ky. Cent. Life Ins. Co.</u>, 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, <u>Russell v. Microdyne Corp.</u>, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. <u>Sosebee v. Murphy</u>, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

## IV.  HOLA Preemption Generally

HOLA empowers the Office of Thrift Supervision ("OTS") "to authorize the creation of federal savings and loan associations, to regulate them, and by its regulations to preempt conflicting state law." <u>In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation</u>, 491 F.3d 638, 642 (7th Cir. 2007); <u>see</u> 12 U.S.C. § 1464. Under this authority, OTS promulgated a preemption regulation in 12 C.F.R. § 560.2 which is entitled to "no less pre-emptive effect than federal statutes." <u>Fidelity</u>

<u>Fed. Sav. and Loan Ass'n v. de la Cuesta</u>, 458 U.S. 141, 153

(1982).  The preemption provision created by OTS provides that:

> OTS hereby occupies the entire field of lending
> regulation for federal savings associations. OTS
> intends to give federal savings associations maximum
> flexibility to exercise their lending powers in
> accordance with a uniform federal scheme of regulation.
> Accordingly, federal savings associations may extend
> credit as authorized under federal law, including this
> part, without regard to state laws purporting to
> regulate or otherwise affect their credit activities,
> except to the extent provided in paragraph (c) of this
> section . . ..

12 C.F.R. § 560.2(a).  In section 560.2(b), OTS provided

illustrative examples of the types of state laws preempted.

Among these listed examples, preempted state laws "include,

without limitation, state laws purporting to impose requirements

regarding":

> (3) Loan-to-value ratios;

> (4) The terms of credit, including amortization of loans and
> the deferral and capitalization of interest and adjustments
> to the interest rate, balance, payments due, or term to
> maturity of the loan, including the circumstances under
> which a loan may be called due and payable upon the passage
> of time or a specified event external to the loan;

> . . .

> (9) Disclosure and advertising, including laws
> requiring specific statements, information, or other
> content to be included in credit application forms,
> credit solicitations, billing statements, credit
> contracts, or other credit-related documents and laws
> requiring creditors to supply copies of credit reports to
> borrowers or applicants;

> . . .

8

(10) Processing, origination, servicing, sale or
purchase of, or investment or participation in,
mortgages;
. . ...

12 C.F.R. § 560.2(b)(3), (4), (9), and (10).

OTS expressly provided, in section 560.2(c), categories
of state laws that "are not preempted to the extent that they
only incidentally affect the lending operations of Federal
savings associations or are otherwise consistent with the
purposes of paragraph (a). . .." 12 C.F.R. § 560.2(c). The
state laws generally excepted from preemption by HOLA are:

(1) Contract and commercial law;

(2) Real property law;

(3) Homestead laws specified in 12 U.S.C. 1462a(f);

(4) Tort law;

(5) Criminal law; and

(6) Any other law that OTS, upon review, finds:

(i)  Furthers a vital state interest; and

(ii) Either has only an incidental effect on
lending operations or is not otherwise
contrary to the purposes expressed in
paragraph (a) of this section.

Id.

OTS has further explained that the preemption provision
in section 560.2(a) is not intended "to preempt basic state laws

9

such as state uniform commercial codes and state laws governing real property, contracts, torts, and crimes." OTS, Lending and Investment, 61 Fed. Reg. 50951, 50966 (Sept. 30, 1996). "[T]he purpose of [the exemptions in] paragraph (c) is to preserve the traditional infrastructure of basic state laws that undergird commercial transactions, not to open the door to state regulation of lending by federal savings associations." Id. OTS outlined the proper analysis for courts to employ when confronted with interpretive questions under section 560.2(a):

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

Id. at 50966-67. See also Casey v. F.D.I.C., 583 F.3d 586, 593 (8th Cir. 2009); Silvas v. E*TRADE Mortgage Corp., 514 F.3d 1001, 1005 (9th Cir. 2008).

        If a court performs the first step of the OTS's analysis and concludes that the state law bases for plaintiff's claims fall within section 560.2(b), plaintiff's claims are deemed by the OTC to be preempted by HOLA. On the other hand, if the court concludes that the state law claim falls outside of

10

section 560.2(b), the OTS directs that it must then be determined whether plaintiff's claims clearly fit within the confines of permissible state law claims laid out in section 560.2(c).  In order to fit within these confines and avoid preemption, the court must be satisfied that the state law involved has, at most, only an incidental effect on lending operations.  12 C.F.R. § 560.2(c).

                    V. HOLA Preemption of Common Law Claims

          BofA asserts that HOLA and 12 C.F.R. § 560.2 preempt plaintiff's claims of unconscionable inducement and fraud in Counts I and II.  As support for this contention, BofA relies in large part upon this court's decision in <u>Jones v. Home Loan Investment, F.S.B.</u>, in which the court found plaintiff's unconscionable conduct claim to be preempted by HOLA because each of that claim's three components were preempted.[1]  (<u>Id.</u> at 7 (citing 2:09-cv-00537, --- F. Supp. 2d ----, 2010 WL 1238437 at *8 (S.D. W. Va. Mar. 22, 2010)).  In response, plaintiff contends that the United States Court of Appeals for the Seventh Circuit's decision in <u>In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation</u> established that HOLA does not preempt common law claims.  (Pl.'s Resp. 7).

---

     [1] <u>See</u> <u>infra</u> pp. 16-17.

                              11

Plaintiff asserts that the court in Ocwen "explicitly rejected" BofA's HOLA preemption argument regarding plaintiff's common law claims of unconscionable inducement in Count I and fraud in Count II. (Pl.'s Resp. 7). To support this conclusory statement, plaintiff refers to a single quotation from In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation as his response to BofA's lengthy discussion of HOLA preemption and Jones, reading as follows:

> [W]e read subsection (c) [of section 560.2] to mean that OTS's assertion of plenary regulatory authority does not deprive persons harmed by the wrongful acts of savings and loan associations of their basic state common-law-type remedies.

491 F.3d 638, 643 (7th Cir. 2007). From this language, plaintiff concludes that Ocwen exempts all common law claims from preemption under HOLA. While Jones contains some discussion of Ocwen with regard to HOLA preemption, it appears that further development may be useful.

As to plaintiff's suggestion that common law claims are never subject to HOLA preemption under Ocwen, a complete reading of Ocwen reveals otherwise. The court specified that "[n]ot all state statutes that might be invoked against a federal [savings bank] are preempted, any more than all common law doctrines are." Id. at 646. Implicit in that statement is that some are preempted. While Ocwen concluded that traditional common law actions of fraud, breach of contract, defamation and slander

12

generally avoid preemption under HOLA, preemption depends on the particular nature of the claims as alleged by the plaintiff.  491 F.3d at 648 ("The twentieth [claim] alleges fraud, and does not appear to be preempted, though this could depend on the nature of the fraud, which is unexplained."); see Jones, 2010 WL 1238437 at *6.  Those common law claims which seek basic state common-law-type remedies and only incidentally affect lending operations survive HOLA preemption, while those common law claims which seek to impose requirements upon the lending activities of federal savings banks that are not consistent with the purposes of section 560.2(a) are preempted.  See Ocwen, 491 F.3d at 643, 645-648 (evaluating painstakingly some twenty of plaintiffs' common law and statutory claims to determine individually whether each avoids HOLA preemption).  Accordingly, plaintiff's claims would not survive solely by virtue of being common law claims under Ocwen.

Ocwen focused on whether enforcement of the state law "would complement rather than substitute for the regulatory scheme."  Id. at 644  The court contemplated the following examples:

> Suppose [a federal savings bank] signs a mortgage agreement with a homeowner that specifies an annual interest rate of 6 percent and a year later bills the homeowner at a rate of 10 percent and when the homeowner refuses to pay institutes foreclosure proceedings. It would be surprising for a federal regulation to forbid the homeowner's state to give the homeowner a defense based on the mortgagee's breach of

13

> contract. Or if the mortgagee (or a servicer like
> Ocwen) fraudulently represents to the mortgagor that it
> will forgive a default, and then forecloses, it would
> be surprising for a federal regulation to bar a suit
> for fraud.

Id. at 643-44.  State law claims seeking basic state common-law-type remedies would not be barred in these examples, despite relating to the terms of credit and servicing of a mortgage loan. Id.

As noted in Jones, it appears that the approach taken by the court in Ocwen will often reach the same result as the OTS-provided analysis inasmuch as both approaches are, in essence, a method of determining whether a plaintiff's state law claim attempts to impose requirements upon the lending activities of federal savings banks.  2010 WL 1238437 at * 6.  Under either approach, the court must consider the specific nature of each state law claim to determine whether an allegation is a state-based cause of action exempted from preemption under section 560.2(c) or an attempt at regulation preempted by section 560.2(b).  Of course, "an agency's interpretation of its own regulation is 'controlling unless plainly erroneous or inconsistent with the regulation.'"  Shipbuilders Council of Am. v. U.S. Coast Guard, 578 F.3d 234, 242 (4th Cir. 2009)(quoting Auer v. Robbins, 519 U.S. 452, 461 (1997)).  Accordingly, to the extent that Ocwen departs from the OTS-provided analysis, the court adopts the HOLA preemption analysis as outlined by the OTS.

14

OTS, <u>Lending and Investment</u>, 61 Fed. Reg. 50951, 50966 (Sept. 30, 1996). Ample room remains for the application of state law that only incidentally affects lending operations, as reflected in <u>Ocwen</u>.

In doing so, the court utilizes the "as applied" rule as employed by the courts in <u>Casey</u> and <u>Silvas</u>. As in these two cases, the "as applied" rule operates within the framework outlined by the OTS for analyzing HOLA preemption. <u>See Jones</u>, 2010 WL 1238437 at *6 (citing <u>Casey</u>, 583 F.3d at 595; <u>Silva</u>, 514 F.3d at 1006). When performing the OTS-provided analysis, the "as applied" rule serves to preempt state laws that either on their face or as applied impose requirements regarding the examples listed in section 560.2(b). <u>Id.</u> "Accordingly, the "as applied" rule exempts from preemption only those generally applicable state laws that fit within the confines of section 560.2(c) without more than incidentally affecting lending." <u>Id.</u> at *4. Inasmuch as plaintiff's claims in this instance are not exempt from HOLA simply by virtue of being common law claims, the court must examine each of plaintiff's allegations individually to determine whether his claims of unconscionable inducement and fraud are preempted by section 560.2.

15

## VI.  Count I - Unconscionable Inducement

In Count I, plaintiff contends that defendant "engaged in predatory lending practices to make unfair loans." (Third Am. Compl. ¶ 14).  Specifically, plaintiff alleges that the loan issued and serviced by defendant "left the Plaintiff worse off than he was with existing financing, and has put him in jeopardy of losing his home."  (Id. at ¶ 16).  Plaintiff further asserts that the "loan agreement was induced by unconscionable conduct, specifically, the Plaintiff was induced into a loan agreement on terms favorable to the lender, but unfavorable to the Plaintiff." (Id. at ¶ 18).  Plaintiff claims that the following "constituted an unfair surprise" to him: (a) the requirement that plaintiff transfer his auto loan balance into the mortgage loan; (b) the indebtedness exceeds the value of his home; and (c) the indebtedness precludes refinancing or sale of the home.  (Id. at ¶ 17).  Based on these allegations, plaintiff contends that the loan issued was unconscionable and, therefore, is unenforceable. (Id. at ¶ 20).

BofA's argument in favor of finding Count I preempted by HOLA relies largely upon this court's decision in Jones v. Home Loan Investment, F.S.B., in which the court found

plaintiff's unconscionable conduct claim to be preempted by HOLA.
(Id. at 7 (citing 2:09-cv-00537, 2010 WL 1238437 at *8 (S.D. W.
Va. Mar. 22, 2010)).  In Jones, the plaintiff alleged
unconscionable conduct under the West Virginia Consumer Credit
and Protection Act, W. Va. Code § 46A-2-121-(1)(a).  2010 WL
1238437, at *8.  Specifically, the plaintiff alleged that the
defendant engaged in unconscionable conduct by (1) failing to
determine if the plaintiff could afford the loans issued, (2)
placing an elderly person into a loan that she could not pay off
within her lifetime, and (3) placing a person in a loan from
which that person would receive no benefit.  Id.  The court held
that plaintiff's state-law claims infringed upon the OTS's
exclusive authority to impose requirements related to the
"[p]rocessing, origination, servicing, sale or purchase of, or
investment or participation in, mortgages" under section
560.2(b)(10).  Id. at *9.  Inasmuch as "[o]nly the OTS can compel
federal savings banks to engage in complex assessments of
borrowers' financial means, life expectancy, and benefits
received from the loan in order to qualify for a mortgage,"
plaintiff's unconscionable conduct claims were preempted by HOLA.
Id.  See Garcia v. Wachovia Mortg. Corp., 676 F. Supp. 2d 895,
913 (C.D. Cal. 2009).  BofA contends that the court should reach

17

the same conclusion with regard to plaintiff's unconscionable inducement and fraud claims in this instance.

As earlier noted, the first step of the HOLA preemption analysis is to determine whether the type of law in question is listed in paragraph (b) of section 560.2. OTS, Lending and Investment, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996). In Count I, as noted, plaintiff offers three allegations of unconscionable inducement by Countrywide: (1) defendant left the plaintiff "worse off" than with his previous mortgage loan and caused plaintiff to be in jeopardy of losing his home; (2) plaintiff was unfairly surprised by certain aspects of the loan agreement; and (3) defendant's unconscionable conduct induced plaintiff into a loan agreement on terms favorable to the lender, but unfavorable to the plaintiff. If these allegations seek to impose requirements of the type described in section 560.2(b), then plaintiff's claim of unconscionable inducement is preempted.

The first of plaintiff's allegations of unconscionable inducement claims, in essence, that Countrywide induced plaintiff into a loan that was not to his benefit and that he could not afford. As BofA noted in its motion for summary judgment, the plaintiff in Jones made similar claims through a statutory unconscionable conduct claim and a common law negligence claim.

18

2010 WL 1238437 *7-9.  In <u>Jones</u>, the court concluded that HOLA preempted both of these claims as they directly implicated the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages" by requiring federal savings banks to make complex determinations of whether borrowers will benefit from the loan or whether the borrowers can afford the loan prior to lending.  <u>Id.</u>  Similarly, plaintiff's first allegation in this instance would require federal savings banks to determine whether the new mortgage loan is more beneficial to the borrower than his existing loan and whether the new mortgage loan might put the borrower at risk of losing the property if he cannot afford the payments.  As this court has noted before, "[o]nly the OTS can compel federal savings banks to engage in complex assessments of borrowers' financial means . . . and benefits received from the loan in order to qualify for a mortgage."  <u>Id.</u> at *9.  See <u>Garcia</u>, 676 F. Supp. 2d at 913. Thus, plaintiff's first allegation of unconscionable inducement is preempted by section 560.2(b)(10).

Plaintiff's second allegation of unconscionable inducement contends that plaintiff was unfairly surprised by certain aspects of his loan agreement with Countrywide. Specifically, plaintiff claims he was unfairly surprised that:

19

(1) Countrywide required him to transfer his auto loan balance
into the mortgage loan amount, (2) his indebtedness exceeded the
value of his property, and (3) his indebtedness precluded further
refinancing or sale of the property.  (Third Am. Compl. ¶¶
23(a)-(c)).  With respect to the "unfair surprise" aspect of
these allegations, section 560.2(9) preempts state law claims
pertaining to disclosures made by federal savings banks when
lending.  Plaintiff may not circumvent the OTS's exclusive
authority to implement disclosure requirements for federal
savings banks through a state law claim of unconscionable
inducement.  Furthermore, section 560.2(b)(4) preempts state law
claims pertaining to terms of credit, which would encompass
plaintiff's allegations regarding Countrywide's requirement that
plaintiff transfer his auto loan balance as a condition for
obtaining his mortgage loan.  Section 560.2(b)(3) precludes state
law claims pertaining to the "[l]oan-to-value ratios" of loans
issued by federal savings banks, which would in turn preclude
plaintiff from making a state law claim here based upon his
indebtedness exceeding the value of his property.  For all of
these reasons, the bases for plaintiff's second allegation of
unconscionable inducement by Countrywide fall within the scope of
section 560.2(b) and are preempted.

Plaintiff's third allegation within Count I contends that the "loan agreement was induced by unconscionable conduct, specifically, the Plaintiff was induced into a loan agreement on terms favorable to the lender, but unfavorable to the Plaintiff." (Id. at ¶ 24).  Inasmuch as section 560.2(b)(4) preempts state law claims imposing requirements regarding the "terms of credit" for loans issued by federal savings banks, the allegedly unfavorable terms of plaintiff's loan are governed exclusively by the OTS and are not subject to state law claims by the plaintiff.

In sum, plaintiff's individual allegations in support of his unconscionable inducement claim fall within the purview of preempted state law claims under section 560.2(b).  Accordingly, plaintiff's claim of unconscionable inducement is dismissed with prejudice.

### VII.  Count II - Fraud and Conspiracy

A.  Conspiracy

Despite its title, the court notes at the outset that Count II does not allege the necessary elements for a civil conspiracy claim.  "A civil conspiracy is not a per se, stand-

21

alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)."  Dunn v. Rockwell, 689 S.E.2d 255, 269 (W. Va. 2009).  In Count II, plaintiff references the acts of the "Defendants," but BofA, as the successor to Countrywide, is the sole defendant in this action.  Inasmuch as a civil conspiracy requires a "combination of two or more persons," plaintiff's conspiracy claim is dismissed with prejudice.  Id. (quoting Dixon v. Am. Indus. Leasing Co., 253 S.E.2d 150, 152 (W. Va. 1979)).

B.  Fraud

In Count II, plaintiff alleges that Countrywide intentionally misrepresented the market value of plaintiff's property using an inflated real estate appraisal for the purpose of inducing plaintiff into the mortgage loan.  (Third Am. Compl. ¶ 24).  Plaintiff claims that Countrywide relied upon a fraudulent appraisal that provided a market value of $84,000, said to be well in excess of the true market value of approximately $64,000.  (Id. at ¶¶ 22, 23).  After plaintiff "reasonably relied upon the procedures of origination being

22

consistent with acceptable lending practices when entering into the loan agreement," he alleges that he suffered damages from the fraudulent appraisal as a result. (Id. at ¶¶ 26, 27).

1. HOLA Preemption of Plaintiff's Fraud Claim

BofA contends that plaintiff's fraud claim relates to the origination procedures of a federal savings bank, and is, therefore, preempted by HOLA. (Def.'s Memo. 14). In response, plaintiff simply asserts that "[s]tate fraud claims and breach of contract claims are not preempted by HOLA" and cites Ocwen. (Pl.'s Resp. 16). As earlier noted, Ocwen concluded that traditional common law actions of fraud, breach of contract, defamation and slander generally avoid preemption under HOLA; however, preemption ultimately depends on the particular nature of the claims as alleged by the plaintiff. 491 F.3d at 646, 648; see Jones, 2010 WL 1238437 at *6. Indeed, the court in Ocwen confronted a fraud claim and noted that the claim did "not appear to be preempted, though this could depend on the nature of the fraud, which is unexplained." Id. at 648. Accordingly, plaintiff's fraud claim is subject to the HOLA preemption analysis established by OTS.

23

First, the court must determine whether the type of law in question is listed in paragraph (b) of section 560.2. OTS, Lending and Investment, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996). As has been noted, under section 560.2(b)(10), state law claims purporting to impose requirements regarding the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages" are preempted. Here, Countrywide ordered Mr. DiPino's appraisal during the origination of plaintiff's mortgage loan.[2] Plaintiff claims that Countrywide used this appraisal to intentionally misrepresent the market value of his property in order to induce him into the mortgage loan. While the appraisal is certainly an aspect of the loan's origination, plaintiff's state law claim does not seek to impose any requirements upon the appraisal process or upon appraisals used by federal savings banks generally. Plaintiff's state law claim would not require lenders to provide appraisals to borrowers prior to originating a home loan. Nor would it require that lenders disclose the market value of property prior to

_____

[2] Indeed, plaintiff characterizes the appraisal as part of the origination of the loan, claiming that he "reasonably relied upon the procedures of origination being consistent with acceptable lending practices when entering into the loan agreement." (Third Am. Compl. ¶ 26). Similar reference is made to the appraisal being part of the loan origination process on at least three occasions within the plaintiff's response brief. (Pl.'s Resp. 3, 11, 15).

issuing a home loan. Unlike plaintiff's unconscionable conduct claim, plaintiff's allegations of fraud do not translate into burdensome requirements to be employed by federal savings banks during lending. His claim simply seeks to prevent lenders from intentionally misrepresenting information to borrowers in a fraudulent manner. This is not a requirement regarding any of the categories listed in section 560.2(b).

Inasmuch as plaintiff's claim is not covered by section 560.2(b), the next question is whether the state law (i.e., contract or tort) affects lending. If so, a presumption arises that the law is preempted. OTS, Lending and Investment, 61 Fed. Reg. 50951, 50966 (Sept. 30, 1996). The presumption may only be reversed if the law can clearly be shown to fit within the confines of paragraph (c), which is to be interpreted narrowly. Id. In other words, the court must:

> [D]etermine whether plaintiff's claims clearly fit
> within the confines of permissible state law claims
> laid out in section 560.2(c). In order to fit within
> these confines, the court must be satisfied that the
> state law involved has, at most, only an incidental
> effect on lending operations.

Jones, 2010 WL 1238437 at *4.

While it is unclear whether plaintiff's common law fraud claim is based upon contract or tort law, it clearly fits

25

within one or both of these categories and is, thus, within the confines of section 560.2(c).  Plaintiff's fraud claim is one of general applicability to business transactions and only incidentally affects the lending activities of federal savings banks.  Indeed, it appears that plaintiff's fraud claim is the very type of claim that was intended to be exempt from HOLA preemption under section 560.2(c).  As noted by the court in Ocwen, it would be surprising for a federal regulation to bar a suit for fraud when there is no private right of action provided by HOLA to enforce the provisions of the statute or the OTS's regulations.  Ocwen, 491 F.3d at 643-44.

### 2. Summary Judgment as to Plaintiff's Fraud Claim

Inasmuch as plaintiff's claim is not preempted by HOLA, the court next considers whether the defendant has established that there is no genuine issue of material fact such that it is entitled to summary judgment as a matter of law.  To prove fraud under West Virginia law, plaintiff must, by clear and convincing evidence at trial, prove:

> (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it.

26

Folio v. City of Clarksburg, 655 S.E.2d 143, 150 (W. Va.
2007)(quoting Kidd v. Mull, Syl. Pt. 5, 595 S.E.2d 308 (W. Va.
2004))(citations omitted); Lengyel v. Lint, Syl. Pt. 1, 280
S.E.2d 66 (1981).  "'Generally, fraud is a question of fact to be
determined by the jury from all the circumstances of the case,'"
but that "'does not automatically immunize the case from summary
judgment.'"  Id. (quoting Jividen v. Law, Syl. Pt. 1, 461 S.E.2d
451 (W. Va. 1995)).  Plaintiff must still discharge his "'burden
by demonstrating that a legitimate jury question, i.e. a genuine
question of material fact, is present.'"  Id. (quoting Jividen,
Syl. Pt. 1, 461 S.E.2d 451).

     As to the first element, BofA acknowledges that
Countrywide ordered the allegedly fraudulent appraisal from Mr.
DiPino and then provided it to plaintiff.  (Def.'s Memo. 15).

     Within the second element, plaintiff must establish
three things: (1) that the act of the defendant was material and
false, (2) that the plaintiff relied on it, and (3) that he was
justified under the circumstances in relying upon it.  As
evidence of the falsity of Countrywide's representation of the
market value of the property, plaintiff offers the retrospective
appraisal of Mr. Wickham, whose appraisal valued the home for
approximately $20,000 less than Mr. DiPino's.  (Pl.'s Resp., Ex.

B). BofA contends that plaintiff cannot establish that

Countrywide knew, or should have known that the appraisal was

false. (Def.'s Memo. 15). However, under West Virginia law,

> Where one person induces another to enter into a
> contract by false representations which he is in a
> situation to know, and which it is his duty to know,
> are untrue, he, in contemplation of law, does know the
> statements to be untrue, and consequently they are held
> to be fraudulent, and the person injured has a remedy
> for the loss sustained by an action for damages. It is
> not indispensable to a recovery that the defendant
> actually knew them to be false.

Kidd, 595 S.E.2d at 314 (quoting Horton v. Tyree, Syl. Pt. 1, 139

S.E.737 (1927)). In this instance, Mr. Wickham's retrospective

appraisal is sufficient to create a question of fact with regard

to whether defendant's alleged misrepresentation of the property

value was false.

However, plaintiff has failed to introduce any evidence

that the alleged misrepresentation was material. See Terra Firma

Co. v. Morgan, 674 S.E.2d 190, 196 (W. Va. 2008). Plaintiff has

not specifically alleged, nor provided any evidence, that the

DiPino appraisal materially affected his decision to enter into

the loan agreement with Countrywide. There is no indication that

plaintiff required an appraisal of the property or conditioned

his decision to refinance upon the fair market value of the home.

It was only after many telephone conversations with Countrywide

28

and upon attending the closing of the loan that plaintiff even learned of the allegedly inflated value reached by Mr. DiPino. Additionally, plaintiff readily admits that he did not think that Mr. DiPino reached the right value for his house when he reviewed the appraisal provided to him at the closing.  According to plaintiff, "I was surprised, I mean, because again I paid $46,000 for [the property in 1988].  I put windows and a door, put a roof on it, and it was probably ten years old, so I couldn't see it jumping [$]20,000."[3]  (Def.'s Mot., Ex. A, Coffman Dep. 27:14-17).  Nevertheless, plaintiff decided to enter into the loan agreement without bringing his objection to the value reached in Mr. DiPino's appraisal to anyone's attention.  <u>Id.</u>  This serves as further indication that the appraisal value was not material to plaintiff's decision to enter into the loan agreement.

Similarly, plaintiff has not offered evidence establishing the remaining portions of the second element of fraud; that is, reliance justified under the circumstances.  In his complaint, plaintiff alleges that he "reasonably relied upon the procedures of origination being consistent with acceptable lending practices when entering into the loan agreement."  (Third

---

[3] Presumably "jumping [$]20,000" references the difference between the existing loan and the allegedly fraudulent appraisal value.

Am. Compl. ¶ 26).  Beyond this generalized allegation,
plaintiff's sole evidence of reliance is simply that he chose to
enter into the loan agreement after reviewing the appraisal
Countrywide provided him at closing.  However, plaintiff readily
admits his "surprise" at the "$20,000 jump" in the value of his
home.  In Kidd, the West Virginia Supreme Court of Appeals cited
with approval section 541 of the Restatement (Second) of Torts,
which states that the "recipient of a fraudulent
misrepresentation is not justified in relying upon its truth if
he knows that it is false or its falsity is obvious to him."
Kidd, 595 S.E.2d at 316 (quoting Restatement (Second) of Torts §
541 (1977)).  The court found that section 541 was consistent
with the rule that "'one cannot rely blindly upon a
representation without suitable investigation and a reasonable
basis.'"  Id. (quoting Tri-State Asphalt Products, Inc. v.
McDonough Co., 391 S.E.2d 912 (1990)).  "Further, it fully
comports with the primary language in syllabus point one of
Lengyel, establishing that one of the elements of a fraud claim
is that the plaintiff relied upon the misrepresentation "and was
justified under the circumstances in relying upon it."  Id.
(quoting Lengyel, Syl. Pt. 1, 280 S.E.2d at 67)(emphasis in
original).  Plaintiff's decision to enter into the loan
agreement, notwithstanding his belief that the value reached by

DiPino was too high, demonstrates that he was not justifiably relying upon the appraisal under the circumstances.

Consequently, defendant's motion for summary judgment as to plaintiff's fraud claim in Count II is granted.


VIII.


Based on the foregoing, it is ORDERED that BofA's motion for summary judgment as to plaintiff's claims in Counts I and II be, and hereby is, granted.  It is further ORDERED that this action be, and hereby is, dismissed and stricken from the docket.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED: August 4, 2010

John T. Copenhaver, Jr.
United States District Judge

31